UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Rita I. Palmer, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:10-cv-151-jgm |
| | : | |
| Michael J. Astrue, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

MEMORANDUM AND ORDER ON CROSS-MOTIONS
TO EITHER REVERSE OR AFFIRM
THE DECISION OF THE COMMISSIONER
(Docs. 5, 9)

Plaintiff Rita I. Palmer has moved to reverse the decision of the Commissioner of Social

Security denying her application for child's insurance benefits under 42 U.S.C. §

402(d)(1)(B)(ii).  Defendant Michael J. Astrue, Commissioner of Social Security, moves for

judgment affirming the denial of benefits.  Ms. Palmer, who is fifty-one years old, currently

receives supplemental security income (SSI) benefits based on a 1995 finding she suffers from

anxiety-related disorders that rendered her disabled beginning January 1, 1994.  An adult already

receiving SSI benefits may also be eligible for "child's" survivor benefits under the Social

Security Act based on a parent's earnings record.  Ms. Palmer applied on February 28, 2007 for

child's survivor benefits.  To be eligible for these benefits she must file an application, show she

is "under a disability" under 42 U.S.C. § 423(d) that began before she attained the age of twenty

two, and that at the time of her father's death, he was entitled to benefits, or was insured, and she

was his dependent.  42 U.S.C. § 402(d)(1) (describing eligibility requirements for child's insurance benefits).  Ms. Palmer claims her psychological disability began as early as January 4, 1977, when she was sixteen, and therefore before she attained the age of twenty two (i.e., before March 8, 1982).  The administrative law judge's (ALJ) January 27, 2010 decision, which became the final decision of the Social Security Administration, concluded Ms. Palmer had not been disabled within the meaning of the Social Security Act before she attained the age of twenty two.

For the reasons that follow, the Commissioner's Motion to Affirm the Decision of the Commissioner (Doc. 9) is GRANTED, and Ms. Palmer's Motion to Reverse the Decision (Doc. 5) is DENIED.

I.    Background

Ms. Palmer was born March 9, 1960.  Her application for child's insurance benefits under the Social Security Act, initiated on February 28, 2007[1] (R. at 259[2]), alleges she was disabled beginning January 1, 1977, when she was sixteen years old.  Ms. Palmer's form SSA-3368 claimed she suffered from effects of child abuse, agoraphobia, anxiety, panic attacks, attention deficit disorder, chronic sinusitis, painful headaches from a head injury, depression, insomnia, bursitis, and curvature of the spine.  (R. at 275.)  She claimed she experienced a "burnout" when she was sixteen, became severely ill after the birth of her son in January 1977, and suffered head injuries in a head-on collision with a milk truck at age eighteen.  Id.

_____

[1]  Ms. Palmer's first filing was dated February 28, 2007.  Other forms completing this claim were dated March 6, 2007.

[2]  Citations to the administrative record are hereinafter to "R. at [page number]."

Ms. Palmer completed high school in 1981, but had no work experience before she turned twenty two.  There are few medical records for the period relevant to her child's insurance benefits claim.  Records from her pregnancy, birth, and a renal clinic do not report any mental illness.  Records from a 1978 psychiatric consultation at St. Mary's Hospital in Montreal, Canada, when she sought treatment for abdominal pain following a fight with her husband, reflect that she reported slight insomnia and appeared emotional and slightly anxious.  (R. at 404.)  She also reported being beaten by her husband in the past.  Id.  When she moved to Vermont, she was treated by psychologist Patricia Moore between the fall of 1979 and 1981, but there are no contemporaneous records from this period.  (See R. at 834.)  Ms. Moore wrote a letter in January 2008 in which she recollected treating Ms. Palmer in 1979 and 1981 and described her as "experiencing high levels of anxiety; fear and depression," and struggling with an "impaired ability to function personally and socially," although Ms. Moore noted she did not feel comfortable filling out a detailed form regarding specific functional limitations from memory because of the lapse of time.  Id.  Records following Ms. Palmer's twenty-second birthday indicate she sought help for mental health issues.  At age twenty three, Ms. Palmer was admitted to Rutland Regional Medical Center for depression.  (R. at 412-14.)  A social worker treating Ms. Palmer in July 1983 assessed her as exhibiting extreme anxiety, paranoid ideation, and a fear of going out in public.  (R. at 860.)  In 1985, after two years of treatment, Ms. Palmer dropped out of psychotherapy.  Id.

In support of her application, Ms. Palmer submitted letters from her mother, brothers, and a former boyfriend.  Ms. Palmer's mother wrote Palmer had acted "differently" since she was approximately eight years old, that she cried daily after school, was unable to recite in class, and

ran away from her birthday party.  (R. at 360.)  She also wrote Ms. Palmer was argumentative as

a teen, cried frequently, went into hysterics, and experienced a breakdown when she lived in

Vermont.  Id. at 363.  One brother wrote that for as long as he could remember, Ms. Palmer never

attended family parties.  (R. at 364.)  He also stated that in 1981, she was very depressed and did

not want to leave the house.  Id.  Another brother wrote Ms. Palmer was always out of sorts,

never felt like she fit in, had few friends, and could not eat in restaurants, converse with him, or

look him in the face.  (R. at 366.)  Ms. Palmer's former boyfriend wrote that she had difficulty

coping with everyday life while they were dating and was sometimes completely oblivious to her

surroundings.  (R. at 372.)

At the most recent hearing on her claim for child's survivor benefits, Ms. Palmer testified

she experienced severe mental health issues before she turned twenty two.  She cried daily after

school, would not speak with anyone, could not stay at birthday parties or family events, and felt

overwhelmed by groups.  (R. at 43.)  She stated she never had friends, although she married at

sixteen and had boyfriends.  (R. at 46.)  She described a "burnout" at sixteen, in which she could

not remember her name or birthday for twenty minutes.  (R. at 43-44.)  In 1979 and the early

eighties, her mother, who lived next door,[3] cared for her son.  (R. at 62.)  Ms. Palmer testified

that in 1983, the year following the relevant period, she had a total breakdown and was suicidal.

(R. at 45-46.)

---

[3] According to Ms. Palmer's mother, she came to care for her daughter and newborn grandson after the birth. (R. at 362.)  Records from St. Mary's Hospital reflect Ms. Palmer took care of her two-year-old child while she was in Canada in 1978.  (R. at 403-404.)  Ms. Palmer left her abusive husband and lived near her mother upon returning to Vermont.

At the time of her father's death on March 11, 1984, Ms. Palmer lived with him and was his dependent. (R. at 259.)

Ms. Palmer currently receives supplemental security income (SSI) benefits based on a 1995 finding that she met the criteria of Listing 12.06 A&B for anxiety-related disorders. (Form SSA-832-C3 at p. 3, R. at 66.) An assessment in 2003 determined those SSI benefits should continue because Ms. Palmer's mental impairment met the criteria of listing 12.03 A&B. (R. at 65.) Her application for SSI benefits alleged a disability onset date of January 1, 1994. (R. at 66.)

Ms. Palmer's application for child survivor benefits was first denied on grounds of insufficient evidence of disability at the initial level of review on August 1, 2007. (R. at 67-68; 95-97.) A Federal Reviewing Official subsequently reviewed and denied the claim in a decision dated January 19, 2008. (R. at 69-75.) Ms. Palmer requested a hearing before an administrative law judge (ALJ), and following a December 10, 2008 video hearing where she was represented by counsel, her claim was again denied by the ALJ on January 9, 2009. (R at 79.) The ALJ found an impairment due to an anxiety disorder, but concluded the impairment was not "severe" before Ms. Palmer turned twenty two. (R. at 79-85.) On February 20, 2009, the Decision Review Board remanded the case to the ALJ, noting the record improperly contained medical records pertaining to another individual, and instructed the ALJ to employ the services of a medical expert. (R. at 86-89, Notice of Order of Decision Review Board and Order.) The ALJ held a second hearing on December 8, 2009, where Ms. Palmer was represented by counsel and appeared by video. (R. at 24-64, Hearing Transcript.) A medical expert and a vocational expert testified. Id. The ALJ issued an unfavorable decision on January 27, 2010, holding that Ms.

5

Palmer was not disabled under the Act prior to March 8, 1982, the date she attained the age of twenty two. (R. at 4-16.) This decision became final when the Decision Review Board declined to act on the claim. (R. at 1-3.)

The ALJ's January 27, 2010 decision applied the five-step valuation process under 20 C.F.R. § 404.1520 to determine whether Ms. Palmer was disabled under section 223(d) of the Social Security Act before she attained the age of twenty two, which is a requirement for entitlement to child's insurance benefits under section 202(d) of the Social Security Act. (R. at 4-16.) At step one, the ALJ determined Ms. Palmer had not engaged in any substantial gainful activity since the alleged 1977 onset of her disability. (R. at 9.) At step two, the ALJ determined Ms. Palmer suffered from severe impairments, i.e., schizoaffective disorder and an anxiety disorder, before she attained the age of twenty two. Id. At step three, however, the ALJ held these impairments did not meet or medically equal listing 12.03 or any other impairment in the Listing of Impairments at 20 C.F.R. part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1525, 404.1526 and 404.1520(d). In particular, the ALJ found that in the period before Palmer's twenty-second birthday, she had (a) only mild, and not "marked," restriction of activities of daily living; (b) moderate, and not "marked," difficulties in maintaining social functioning; (c) moderate, and not "marked," difficulties in her concentration, persistence and pace; and (d) she had experienced no episodes of decompensation of extended duration during the period. (R. at 10-13.)

Because Ms. Palmer's impairment did not meet or equal a listed impairment, the ALJ next assessed and made a finding regarding her residual functional capacity, i.e., her ability to do physical and mental work activities on a sustained basis despite limitations caused by all her

6

impairments, whether severe or not.  (R. at 8-9.)  The ALJ held Ms. Palmer had the residual

functional capacity to perform a full range of work at all exertional levels, but with the

nonexertional limitation that she could perform only entry-level unskilled tasks where she would

not have to interact with the public or with more than one supervisor and one other person.  (R. at

13.)  The ALJ based this finding on the objective medical and other evidence, and opinion

evidence.  Id.  The ALJ determined Palmer's statements regarding the intensity, persistence and

limiting effects of her anxiety were not credible.  Id. at 14.  He noted Palmer married at sixteen

and was able to be the primary caretaker of her young child.  Id.  The ALJ pointed to one medical

record from the relevant period, when Ms. Palmer sought treatment at St. Mary's Hospital in

Montreal, which noted Ms. Palmer "looks slight [sic] anxious" (R. at 404) when she sought

treatment.  (R. at 14.)  The ALJ noted Ms. Palmer had not presented medical evidence or

academic records to support her claim that she had difficulty attending school.  Id.  She was able

to graduate from high school.  Id.  There was no evidence supporting her claim of chronic

insomnia during the relevant period.  Id.  While the ALJ considered statements by Palmer's

mother, her brothers, and a family friend, he afforded them little weight because none provided

specific descriptions of functional limitations suffered during the relevant period, and they

appeared to be self-serving.  Id.  The ALJ concluded Ms. Palmer retained residual functional

capacity between the alleged January 1, 1977 onset date and Ms. Palmer's twenty-second

birthday on March 9, 1982.  Id.

    At step four, the ALJ determined whether Palmer had the residual functional capacity to

perform the requirements of her past relevant work.  Id. at 9.  He found Ms. Palmer had no past

relevant work, and therefore proceeded to consider under step five whether, given her age,

education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform.  Id. at 14-15 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)); see also Walterich v. Astrue, 578 F. Supp. 2d 482, 517 (W.D.N.Y. 2008) ("Once the claimant has established that he has no past relevant work experience or cannot perform his past relevant work because of his impairments, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform.").

The ALJ considered the vocational expert's testimony that Ms. Palmer, despite her non-exertional limitations,  would have been able to perform, in the relevant time period, the requirements of occupations such as a cleaner, marker, or laundry worker, which existed in significant numbers in the national economy.  Id. at 15.  The ALJ concluded Ms. Palmer had not been under a disability prior to March 8[4], 1982.  Id. at 16.

II.     Discussion

Ms. Palmer appeals the ALJ's decision denying her child's insurance benefits, arguing (1) the ALJ improperly dismissed statements by Ms. Palmer's relatives and a friend; (2) that he failed to reasonably infer Ms. Palmer's asserted earlier onset date from medical records created after the relevant period, as Social Security Ruling 83-20 permits, because early onset was consistent with the evidence available; (3) his assessment that Ms. Palmer lacked credibility was not grounded in evidence, and he did not articulate reasons for it; and (4) the vocational expert's testimony was not sufficiently reliable.  Defendant Commissioner responds that both the ALJ's

---

[4]  For the purposes of child disability benefits, a person attains the age of 22 the day before her 22nd birthday.

decision to afford little weight to statements by relatives and friends, and his evaluation of Ms. Palmer's credibility, are supported by substantial evidence; that the decision properly followed Social Security Ruling 83-20; and the vocational expert's testimony, which was based on his experience and training, was sufficiently reliable.

    A.    <u>Standard of Review</u>

"A determination by the Secretary that a person is not disabled is conclusive when that decision is supported by substantial evidence." <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (holding a written report by an examining physician was substantial evidence supporting an adverse finding despite contrary testimony by claimant). "[A] reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams</u>, 859 F.2d at 258. In addition to determining whether substantial evidence supports the Commissioner's factual findings, a court considers whether the Commissioner applied the correct legal standard. <u>Acierno v. Barnhart</u>, 475 F.3d 77, 80-81 (2d Cir. 2007); 42 U.S.C. § 405(g). A reviewing court will reverse an administrative determination "only when it does not rest on adequate findings sustained by evidence having rational probative force." <u>Williams</u>, 859 F.2d at 258.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." <u>Pietrunti v. Dir., Office of Workers' Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotations omitted). However,

credibility findings must be grounded in evidence and set forth with sufficient specificity to permit review.  Williams, 859 F.2d at 260-61; SSR 96-7p, available at 1996 WL 374186, at **2, 4.

  B.  Substantial Evidence Supports the Assessment of Ms. Palmer's Credibility
      and the Weight Afforded to Supporting Statements

Substantial evidence supports the ALJ's determinations that Ms. Palmer's testimony regarding the intensity, severity, and limiting effects of her symptoms was not credible, and that statements of family and friends should be afforded little weight.  An ALJ "is not obliged to accept without question the credibility of such subjective evidence" and "has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence."  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  An ALJ must evaluate subjective complaints by first determining whether there is "an underlying medically determinable physical or mental" impairment that "could reasonably be expected to produce the individual's pain or other symptoms," and second, whether the "intensity, persistence, and limiting effects of the individual's symptoms" are such that they "limit the individual's ability to do basic work activities."  SSR 96-7p, available at 1996 WL 374186 at *2. When statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the adjudicator must consider "the entire case record" in assessing credibility.  Id.

Here, the ALJ set forth specific reasons for finding Ms. Palmer's statements regarding the severity of her symptoms were not credible.  The ALJ noted Palmer had married at sixteen and was able to serve as the primary caretaker of her child; a St. Mary's psychiatrist assessed Palmer

as cooperative and only slightly anxious; Palmer was able to graduate from high school before the age of twenty two; and there was no support in the record for her difficulties in school or more than "slight" insomnia.  (R. at 14.)  The ALJ concluded there were no medical records from the relevant period that reflected the extreme level of anxiety Ms. Palmer claims she experienced before she turned twenty two.  Ms. Palmer's failure to seek further treatment for anxiety or insomnia undermined her credibility regarding the intensity and limitations caused by these symptoms.  Id.

There is substantial evidence supporting the ALJ's determination that statements by Ms. Palmer's family and a friend should be afforded little weight because they did not specifically describe her functional limitations during the relevant time period.  "The testimony of lay witnesses may be entitled to great weight if uncontradicted in the record."  Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002).  However, where the evidence does not cover the relevant time period, it may be afforded little weight.  See Dunn v. Astrue, 08-cv-704-C, 2010 WL 376390, at *7 (W.D.N.Y. Jan. 27, 2010).  Here, Mr. Dumas, who dated Ms. Palmer, submitted a short letter stating he first met Palmer at some point in 1982 and generally describes her as withdrawn, despondent to the point of total despair, and unable to cope with everyday life; but it is not clear he knew her before March 8, 1982.  (R. at 372.)   Ms. Palmer's mother and two brothers submitted letters describing an inability to go into restaurants, anxious behavior, and depression.  (R. at 360, 364, 366, 367.)  Ms. Palmer's mother describes various anxious behaviors that pre-date the relevant time period.  (R. at 360-61.)  Ms. Palmer's mother also describes Ms. Palmer's car accident during the relevant time period, and explains that she went to Canada to care for Ms. Palmer's newborn while Ms. Palmer recovered from the accident, and

11

a doctor warned her that Ms. Palmer was headed for a breakdown.  (R at 361-62.)  Ms. Palmer's

mother also describes, without specifying dates, Ms. Palmer's inability to eat in restaurants.  (R.

at 363.)  Ms. Palmer's brothers describe various anxious behaviors without specifying dates, or

generalized behavior, and therefore fail to elucidate whether, during the relevant time period, Ms.

Palmer had significant functional limitations impairing her ability to work.  The ALJ also noted

that these statements appeared to be self-serving.  (R. at 14.)  Because there is substantial

evidence the letters either provided little information that would help the ALJ determine the

extent of Ms. Palmer's functional limitations, or provided information regarding behavior outside

the relevant period, the ALJ properly afforded little weight to these statements.

     C.    The ALJ Properly Followed Social Security Ruling 83-20

     The ALJ determined Ms. Palmer was not disabled before the age of twenty two, and

therefore is not required under SSR 83-20 to determine the onset date of either the disability she

claimed to have before turning twenty two, or the disability for which she is now collecting SSI

benefits.  An ALJ's determination that a claimant is not disabled obviates the duty under SSR 83-

20 to determine an onset date.  Baladi v. Barnhart, 33 F. App'x 562, 564 (2d Cir. 2002); see also

Carlson v. Barnhart, 3:05-cv-1584, 2006 WL 2926818, at *15 n.11 (D. Conn. Aug. 30, 2006)

(noting SSR 83-20 applies "once a claimant has been found disabled during the period at issue").

In any case, SSR 83-20 provides that "[i]n most title II childhood disability cases, a precise onset

date need not be established as long as disability is found to have begun prior to attainment of

age 22."  SSR 83-20, 1983 WL 31249, at *4 (listing combination of circumstances, not

applicable here because Ms. Palmer filed her application after reaching the age of 23, where a

precise onset date would be necessary to demonstrate first month of entitlement).   Therefore, the

ALJ's decision cannot be challenged on grounds it fails to comply with SSR 83-20.

        D.      The Vocational Expert's Testimony was Sufficiently Reliable

The vocational expert's testimony was sufficiently reliable in this case.  Ms. Palmer

claims the expert's testimony ran afoul of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993), because he did not use reliable methods to determine or estimate job numbers

for identified job titles from the Dictionary of Occupational Titles (DOT).  Ms. Palmer argues the

data and reasoning underlying his testimony must be available on demand.  Here, the vocational

expert stated he arrived at the job numbers for each DOT title by reducing the numbers provided

by Bureau of Labor statistics to account for the fact the statistics include part-time or seasonal

jobs.  (R. at 59-61.)  When questioned by the ALJ whether halving the numbers provided by

those statistics would result in a conservative estimate of available jobs, the vocational expert

agreed.  (R. at 61.)  He testified that he estimated what he believed was a fair representation of

the number of available jobs based on his own experience and training.  (R. at 60.)

Federal Rule of Evidence 702, and therefore Daubert, do not apply to disability

adjudications.  See 20 C.F.R. § 404.950(c) (ALJ may receive evidence otherwise inadmissible in

court).  However, the vocational expert's testimony here was based on identifiable statistics, and

he offered a conservative estimate of the available number of jobs based upon those numbers,

informed by his expertise and experience.  This is sufficient to satisfy the "substantial evidence"

standard.  See Piekarski v. Astrue, No. 08-cv-372S, 2009 WL 2992277, at *5 (W.D.N.Y. Sept.

15, 2009) (recognizing Second Circuit has not addressed the required foundation for vocational

expert testimony, but accepting vocational expert testimony based upon verifiable sources and

expert's own adjustments based upon his experience).  Here, the vocational expert's testimony was not "conjured out of whole cloth."  <u>Donahue v. Barnhart</u>, 279 F.3d 441, 446 (7th Cir. 2002) (noting requirement that experts use reliable methods does not depend on Rule 702 alone, and evidence is not "substantial" if conjured out of whole cloth).  Nor did the vocational expert here rely on non-existent sources or solely on his own research, rather than trade publications.  <u>See Ali v. Astrue</u>, No. 09-cv-166, 2010 WL 502779, at *4-5 (W.D.N.Y. Feb. 9, 2010) (finding vocational expert testimony based on own "digging" rather than publications was not reliable).  Ms. Palmer's challenge to the vocational expert's testimony is therefore unavailing.

III.    <u>Conclusion</u>

Therefore, Ms. Palmer's Motion to Reverse the Decision of the Commissioner (Doc. 5) is DENIED, and the Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. 9) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of September, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

14